IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

MICHAEL EUGENE COX                    )
                                      )
v.                                    )     No. 2:12-0046
                                      )
CAROLYN W. COLVIN,                    )
        Acting Commissioner of        )
        Social Security               )


To: The Honorable John T. Nixon, Senior District Judge


**REPORT AND RECOMMENDATION**

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the

final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's

claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), as

provided by the Social Security Act.

Upon review of the Administrative Record as a whole, the Court finds that the

Commissioner's determination that the plaintiff is not disabled under the Act is supported by

substantial evidence in the record as required by 42 U.S.C. § 405(g) and that the plaintiff's motion

for judgment on the administrative record (Docket Entry No. 15) should be DENIED.


**I. INTRODUCTION**

On June 29, 2009, the plaintiff protectively filed for SSI and DIB, alleging a disability onset

date of March 15, 2009, due to back pain and high blood pressure. (Tr. 19, 116-25, 144, 148.) His

applications were denied initially and upon reconsideration. (Tr. 53-61, 71-76.) On December 9,

2010, the plaintiff appeared and testified at a hearing before Administrative Law Judge Frank Letchworth ("ALJ"). (Tr. 31-52.) The ALJ entered an unfavorable decision on January 12, 2011. (Tr. 19-26.) On May 18, 2012, the Appeals Council denied the plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.)

## II. BACKGROUND

The plaintiff was born on February 3, 1968, and he was 41 years old as of his alleged disability onset date. (Tr. 144.) He graduated high school and has worked as an assembly line worker and supervisor, emergency medical technician ("EMT"), and car salesman. (Tr. 36-38, 49, 176-79, 184.)

### A. Chronological Background: Procedural Developments and Medical Records

From 1988 to 1990, Dr. Paul McCombs performed three surgeries to correct recurrent disc herniation of the plaintiff's lumbar spine at L4-L5. (Tr. 222-26, 239-46.) After each surgery, the plaintiff received follow-up care from Dr. McCombs. (Tr. 222-26.) In August 1993, the plaintiff reported to Dr. McCombs that he had been "doing well" until a month earlier when he was in an automobile accident. (Tr. 222.) A CT scan showed no evidence of a disc rupture, and Dr. McCombs opined that the plaintiff had "strained [his] back and ha[d] some irritated nerves." (Tr. 237.)

The plaintiff returned to Dr. McCombs in October 1999 with pain in his back, right hip, and right leg that he reported had gotten "progressively worse despite conservative management." (Tr. 221.) Myelograms and CT scans taken at this time showed disc bulging at L3-L4, disc degeneration with spinal stenosis at L4-L5, and a "transitional type L5-S1 disc." (Tr. 221, 228-30,

233-36.)  Between November 1999 and January 2000, the plaintiff received a series of three epidural steroid injections ("ESIs").  (Tr. 219-20, 227, 231-32.)  In March 2000, the plaintiff reported that he had "made [i]mprovement after his last ESI," and Dr. McCombs instructed him to return if he had a "significant recurrence of his symptoms."  (Tr. 219.)  He did not return until February 2009, when he presented with increasing pain in his back and right hip over the previous year, and Dr. McCombs scheduled a lumbar MRI.  (Tr. 270.)

The plaintiff presented to Dr. Samantha McLerran in March 2009 with chronic low back pain and difficulty sleeping.  (Tr. 310-14.)  On March 20, 2009, he reported that he had recently gone to the emergency room and been hospitalized with "acute worsening" of his low back pain.  (Tr. 304.)  Dr. McLerran administered a Demerol injection and prescribed Percocet and Hydrocodone-Acetaminophen.[1]  (Tr. 306.)  An April 2009 MRI showed canal stenosis and foraminal narrowing that was moderate at L3-L4 and moderate to severe at L4-L5.  (Tr. 267, 317.)  An April 2009 x-ray showed "[m]inimal lumbar scoliosis" and "[m]oderate degenerative bony and disk space changes at L4-5 and L5-S1."  (Tr. 266.)  Dr. McLerran continued to see the plaintiff for low back pain in April 2009, and she prescribed Percocet, Prednisone, and Zanaflex and encouraged him to exercise.[2] (Tr. 250-65, 297, 364-67.)

On May 19, 2009, the plaintiff presented to Dr. William Schooley, a neurologist, who diagnosed him with lumbar spondylosis, lumbar radiculopathy, post-laminectomy syndrome, and lumbar stenosis.  (Tr. 326.)  Dr. Schooley referred the plaintiff to pain management under the care

---

[1] Demerol, Percocet, and Hydrocodone-Acetaminophen are narcotic analgesics.  Saunders Pharmaceutical Word Book 208, 352, 546 (2009) ("Saunders").

[2] Prednisone is a corticosteroidal anti-inflammatory.  Saunders at 575.  Zanaflex is a skeletal muscle relaxant.  *Id.* at 773.

of Dr. William Leone, who prescribed, *inter alia,* Oxycontin, Lortab, Robaxin, and Percocet and performed a series of three ESIs in June and July 2009.[3]  (Tr. 321, 326, 344-61.)  Dr. Leone also administered two lumbar medial branch nerve blocks in September 2009 and a lumbar medial branch nerve rhizotomy in November 2009.  (Tr. 347, 350, 352.)

In June 2009, Dr. Schooley recommended an electrophysiological evaluation of the plaintiff's legs, which returned normal with "no evidence . . . for a recurrent nerve entrapment syndrome or peripheral neuropathy."  (Tr. 327, 331-32.)  A lumbar myelogram in June 2009 revealed "[s]mooth anterior extradural filling defects [at] L3-L4 and L4-L5," "[n]erve root sleeves . . . symmetrically opacified," and "[n]o intradural filling defect or mass."  (Tr. 328, 438.)  A post-myelogram CT scan showed probable disc bulging at T11-T12; mild disc bulging at L1-L2 and L2-L3; mild stenosis and disc protrusion at L3-L4; severe degenerative disc disease, moderate facet arthropathy, and moderate bilateral foraminal stenosis at L4-L5; and a "[t]ransitional sacralized L5 segment."  (Tr. 329-30.)

The plaintiff returned to Dr. McLerran in August 2009 with complaints of elevated blood pressure, and Dr. McLerran diagnosed him with benign essential hypertension and, in October 2009, with insomnia.  (Tr. 370-73, 379.)  Dr. McLerran continued to treat the plaintiff, primarily for hypertension and insomnia, through September 2010, during which time she prescribed Captopril-Hydrochlorothiazide, Norvasc, Opana, Zanaflex, Lunesta, and Xanax.[4]  (Tr. 370-87, 396-98, 441-61.)

---

[3] Oxycontin and Lortab are narcotic analgesics.  Saunders at 415, 524.  Robaxin is a skeletal muscle relaxant.  *Id.* at 619.

[4] Captopril-Hydrochlorothiazide and Norvasc are antihypertensives.  Saunders at 129, 500. Opana is a narcotic analgesic for moderate to severe pain.  *Id.* at 513.  Lunesta is a nonbarbiturate sedative and hypnotic for chronic insomnia.  *Id.* at 418.  Xanax is an anxiolytic and sedative.  *Id.* at 768.

The plaintiff completed a Function Report in August 2009 in which he indicated that he was able to "help with house work and yard work." (Tr. 167-74.) He reported that he could not stand for longer than 15 to 20 minutes, could not "lift anything heavy," and could not walk for more than a quarter of a mile "without pain." (Tr. 168.) He also reported that he had difficulty bending to put his shoes on and that he could not "climb more than three stairs." (Tr. 168, 172.) He indicated that he watched television, visited with friends, and went fishing and boating once a month. (Tr. 171.)

On October 20, 2009, Dr. John Netterville, a nonexamining Tennessee Disability Determination Services ("DDS") consultative physician, completed a physical Residual Functional Capacity ("RFC") assessment. (Tr. 335-43.) Dr. Netterville opined that the plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. (Tr. 336.) He opined that the plaintiff could push and/or pull in unlimited amounts; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and never climb ladders, ropes, or scaffolds.[5] (Tr. 336-37.)

The plaintiff continued to see Dr. Leone through October 2010 and was prescribed Oxycontin and Lortab. (Tr. 404-36, 462-81.) A thoracic spine x-ray in January 2010 showed "[m]ild to moderate spondylosis" and "[m]ild anterior wedging/compression fractures at T-11 and T-12." (Tr. 393.) In a treatment note on January 14, 2010, Dr. Leone indicated that, "per Dr. Schooley," the plaintiff had an "inoperable disc bulge [at] this point" and was "[u]nable to work" due to low back pain. (Tr. 432.) In March and April 2010, Dr. Leone administered three ESIs at L3-L4 and

---

[5] On January 25, 2010, Dr. Christopher Fletcher, a nonexamining DDS consultative physician, "affirmed" Dr. Netterville's RFC assessment. (Tr. 362.)

5

prescribed Neurontin in addition to Oxycontin and Percocet.[6]  (Tr. 413, 417, 424-25.)  A lumbar spine MRI in April 2010 showed levoscoliosis, "[t]ransitional anatomy" in the form of a "sacralized L5 segment with a rudimentary L5/S1 disc space," central disc protrusion at T11-T12, mild central stenosis and moderate foraminal stenosis at L3-L4, and post-surgical changes with mild central stenosis and moderate to severe bilateral foraminal narrowing at L4-L5.  (Tr. 436.)

On April 30, 2010, Dr. McCombs completed a Medical Source Statement assessing the plaintiff's ability to do work-related physical activities.  (Tr. 400-03.)  Dr. McCombs opined that the plaintiff could lift and/or carry less than ten pounds occasionally and frequently, stand and/or walk less than two hours in an eight-hour workday, and sit about four hours in an eight-hour workday.  (Tr. 400.)  He opined that the plaintiff's ability to push and/or pull was limited in his lower extremities and that he would need to periodically alternate sitting and standing.  (Tr. 401.)  Dr. McCombs based these conclusions on the plaintiff's history of three previous lumbar surgeries and a "current physical exam."  *Id.*  Dr. McCombs also opined that the plaintiff would frequently experience pain severe enough to interfere with attention and concentration, that he was "[i]ncapable of even 'low stress jobs,'" that he would need to take unscheduled breaks every two hours, that he would need to elevate his legs with prolonged sitting, and that he would likely be absent from work more than four times a month.  *Id.*  Finally, Dr. McCombs opined that the plaintiff could never balance, crawl, or climb ramps, stairs, ladders, ropes, or scaffolds; could occasionally kneel and crouch; and was limited reaching in all directions including overhead.  (Tr. 402.)

---

[6] Neurontin is an anticonvulsant for partial-onset seizures and a treatment for postherpetic neuralgia.  Saunders at 488.

On June 16, 2010, Dr. Leone performed a fluoroscopically guided L3-L4, L4-L5, and L5-S1 provocative lumbar discography. (Tr. 408.) A post-discogram CT scan showed "[t]ransitional lumbosacral anatomy with a sacralized L5 vertebral segment" and "[c]entral canal, lateral recess and biforaminal stenosis at L3-L4 and L4-L5." (Tr. 435.)

On June 21, 2010, the plaintiff presented to Dr. McLerran for follow up, reporting that he had been to the emergency room after burning his leg with a motorcycle. (Tr. 442.) His mother reported that he was "confused" and "talking to sons who [were] not there." *Id.* Dr. McLerran diagnosed him with a second degree lower limb burn, altered mental status, and cellulitis and abscess of leg. (Tr. 449.) The plaintiff continued to be seen by Drs. Leone and McLerran through October 2010 for hypertension, insomnia, and low back and leg pain. (Tr. 404-07, 446-81.)

**B. Hearing Testimony**

At the plaintiff's hearing on December 9, 2010, the plaintiff was represented by counsel, and both the plaintiff and Edward Smith, a vocational expert ("VE"), testified. (Tr. 31-52.) The plaintiff testified that he lives with his mother, is separated from his wife, and has two adult children. (Tr. 34-35.) He testified that he has worked as an assembly line worker, assembly line supervisor, EMT, construction worker, and car dealer, and he explained that he had difficulty performing each of these jobs because of back pain from standing and walking. (Tr. 35-38.)

The plaintiff testified that Dr. McCombs performed surgery on his back three times in the 1980's and 1990's. (Tr. 41-42.) The plaintiff explained that he had returned to Dr. McCombs approximately two years before the hearing but had stopped going to Dr. McCombs because he did not accept TennCare. (Tr. 40, 42.) The plaintiff said that Dr. McCombs did not examine him in

April 2010 when he completed his Medical Source Statement. (Tr. 42.) He related that Dr. McCombs had referred him to Dr. Schooley, who had told him that he needed another surgery but that "it wouldn't help" and "might make it worse." (Tr. 41.) The plaintiff said that he stopped seeing any doctors except for Dr. McLerran because he did not have insurance. (Tr. 39-40.)

The plaintiff testified that he is able to clean the house, sweep, and wash dishes using a dishwasher. (Tr. 44.) He said that his sons do the yard work but that he helps his mother in the garden by "pick[ing] beans for 45-minutes at a time." (Tr. 44-45.) He said that he can sit for approximately 30 to 45 minutes at a time and that he can alternate sitting and standing for about two hours at a time before he needs to "lie down and put [his] feet up." (Tr. 45-46.) He said that lying down and elevating his feet is "the only thing that relieves the pain." *Id.*

The VE classified the plaintiff's past job as an assembly line worker as medium and semi-skilled, his past job as an assembly line supervisor as medium and skilled, and his past job as an EMT as medium and skilled. (Tr. 49.) The ALJ asked the VE whether a hypothetical person with the plaintiff's age, education, and work experience would be able to obtain work if he could perform light work; could not climb ladders, ropes, or scaffolds; and could occasionally perform other postural activities. *Id.* The VE replied that such a person could not perform the plaintiff's past relevant work but could work as a gate guard, parking lot attendant, and textile checker. (Tr. 50.)

Next, the ALJ asked whether a person with these limitations could obtain work if he were further limited to standing and walking for no more than four hours in an eight-hour workday. *Id.* The VE replied that such a person could still perform the jobs that he identified because they would allow for a person to sit and stand at will. (Tr. 50-51.) The VE explained that such a sit/stand option

was not provided for in the Dictionary of Occupational Titles ("DOT") but that his opinion was based on his professional experience. (Tr. 51.)

## III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable ruling on January 12, 2011. (Tr. 19-26.) Based upon the record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment: chronic radicular back pain (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand/walk for no more than four out of eight hours in an 8-hour workday with the ability to sit/stand at will; lift/carry 10 pounds frequently and 20 pounds occasionally. He can do no climbing of ropes and scaffolds but is able to occasionally perform other posturals.

\*\*\*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\*\*\*

7. The claimant was born on February 3, 1968 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\*\*\*

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-25.)

# IV. DISCUSSION

## A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d

399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful

activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that he meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff

is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability.  *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled.  *Id.*  The plaintiff has the burden of proving inability to perform past relevant work or proving that a particular past job should not be considered relevant.  *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989).  If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his past relevant employment, the burden of production shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy.  20 C.F.R. § 404.1512(f).  *See also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).  To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform.  *Longworth*, 402 F.3d at 595.  *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances).  It remains the plaintiff's burden to prove the extent of his functional limitations.  *Her*, 203 F.3d at 391.  Even if the plaintiff's impairment does prevent him from doing his past

relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, he is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

## B. The Five-Step Inquiry

In this case, the ALJ resolved the plaintiff's claim at step five of the five-step process. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 21.) At step two, the ALJ determined that the plaintiff had the severe impairment of "chronic radicular back pain." *Id.* At step three, the ALJ found that the plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ determined that the plaintiff was unable to perform his past relevant work. (Tr. 24.) At step five, the ALJ found that the plaintiff could work as a gate guard, parking lot attendant, or textile checker. (Tr. 24-25.)

**C. The Plaintiff's Assertions of Error**

The plaintiff argues that the ALJ erred in assessing the opinion of Dr. McCombs and in evaluating his subjective complaints of pain. Docket Entry No. 16, at 20-25.

**1. The ALJ properly assessed Dr. McCombs' opinion.**

The plaintiff argues that the ALJ "erred in rejecting the opinion of treating physician Dr. Paul McCombs." Docket Entry No. 16, at 20-22.

According to the Regulations, the SSA "will evaluate every medical opinion" that it receives. 20 C.F.R. § 416.927(c). The medical opinion of a treating source[7] is entitled to "controlling weight" if the opinion of the treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2).[8] *See also Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. Aug. 31, 2010); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). This is commonly known as the treating physician rule. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not give

---

[7] The Regulations define a treating source as "[the plaintiff's] own physician, psychologist, or other acceptable medical source who provides [the plaintiff], or has provided [the plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the plaintiff]." 20 C.F.R. § 416.902. An "ongoing treatment relationship" is a relationship with an "acceptable medical source when the medical evidence establishes that [the plaintiff] see[s], or [has] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the plaintiff's] medical condition(s)." *Id.*

[8] Effective March 26, 2012, the numbering for the treating physician rule changed, and sections 404.1527(d)(2) and 416.927(d)(2) became sections 404.1527(c)(2) and 416.927(c)(2), respectively. *See Johnson-Hunt v. Comm'r of Soc. Sec.*, 2012 WL 4039752, at *6 n.6 (6th Cir. Sept. 14, 2012).

a treating source's medical opinion controlling weight, he must weigh the opinion using the factors in 20 C.F.R. § 416.927(c)(2)-(6)[9] and provide "good reasons" for the weight given to the treating source's opinion. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (citing current 20 C.F.R. § 416.927(c)(2)). The "good reasons" must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* If an ALJ fails to adhere to this procedural requirement, the case should be remanded for further clarification.[10] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004).

The plaintiff argues that the ALJ improperly rejected the opinion of Dr. McCombs, who completed a physical RFC assessment opining that the plaintiff could perform less than a full range of sedentary work. (Tr. 400-403.) The ALJ assigned Dr. McCombs' opinion little weight, explaining his decision as follows:

> The undersigned is cognizant of the April 2010 medical source statement provided by Dr. McCombs that limits the claimant to less than sedentary work but finds this assessment to be overly restrictive in that Dr. McCombs (who previously performed

---

[9] Appropriate factors include:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant.

20 C.F.R. § 416.927(c)(2)-(6).

[10] The rationale for the "good reasons" requirement is to provide the plaintiff with a better understanding of the reasoning behind the decision in his case and to ensure that the ALJ properly applied the treating physician rule. *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

three back surgeries for the claimant 20 years ago) has not continued to provide longitudinal treatment to the claimant other than one office visit in February 2009, at which time the claimant reported that his chronic back pain was progressively worsening despite a five-year history of treatment with lumbar epidural injections. The Administrative Law Judge accords little weight to this opinion and notes the claimant admitted that he had not been treated by Dr. McCombs in nearly two years. The opinion of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary. It is possible that a treating physician may express an opinion in an effort to assist a patient with whom he or she sympathizes. Moreover, patients can be insistent in seeking supportive notes or reports from their physicians who might provide such a note in order to avoid unnecessary doctor-patient tension. Although impossible to confirm the presence of such motives, it is more likely that such motives exist where the assessment departs substantially from the rest of the evidence of record, as in the current case.

(Tr. 22.)

The ALJ provided good reasons for not giving controlling weight to Dr. McCombs' opinion. Although the ALJ could have provided a more thorough explanation, he clearly found that Dr. McCombs' opinion was inconsistent with the record, noting that it "depart[ed] substantially from the rest of the evidence of record." *Id.* In determining the weight to give the opinion, the ALJ considered appropriate factors including the length, nature, and extent of the treatment relationship as well as the frequency of examination. *See* 20 C.F.R. § 416.927(c)(2). As the ALJ noted, Dr. McCombs performed three back surgeries on the plaintiff between 1988 and 1990. (Tr. 222-26, 239-46.) However, since that time, Dr. McCombs treated the plaintiff very infrequently. The plaintiff returned to Dr. McCombs for a few visits in late 1999 and early 2000 (tr. 219-21) but did not return again until February 2009 when he saw Dr. McCombs for one visit. (Tr. 270.)

Dr. McCombs did not treat the plaintiff again before filling out a Medical Source Statement in April 2010, at which time, according to the plaintiff, Dr. McCombs did not examine him.[11]  (Tr. 42.)

The Regulations provide that a treating physician's opinion is entitled to more weight because of the physician's ability to provide a detailed, longitudinal health picture.  *See* 20 C.F.R. § 416.927(c)(2).  It was entirely appropriate for the ALJ to consider the significant gaps in treatment during the period between 1990 and 2010, when Dr. McCombs completed the Medical Source Statement, as relevant to the reliability of his opinion.[12]  Likewise, it was appropriate for the ALJ to consider the fact that Dr. McCombs had not seen the plaintiff in more than a year when he completed his opinion in April 2010.

The Court does not find any basis in the record for the ALJ's inference that Dr. McCombs provided a sympathetic medical opinion "in order to avoid unnecessary doctor-patient tension." (Tr. 22.)  Indeed, given the lack of treatment rendered by Dr. McCombs between 1990 and 2010, this seems unlikely.  However, taken as a whole, the Court finds that the ALJ gave good reasons for discounting Dr. McCombs' opinion.  The sparsity of longitudinal treatment between 1990 and 2010

---

[11] In his Medical Source Statement, Dr. McCombs indicated that his opinion was based in part on a "current physical exam." (Tr. 401.)  However, no such exam is attached to the Medical Source Statement or otherwise included in the record, and the plaintiff testified that Dr. McCombs did not examine him in April 2010.  (Tr. 42.)  It is not clear whether Dr. McCombs was referring to a physical examination from February 2009, when the plaintiff testified that Dr. McCombs did examine him, because no such examination is included in the record or referenced in Dr. McCombs' treatment note from that visit.  (Tr. 270.)

[12] Given the lack of treatment between 1990 and 2010, the Court questions whether Dr. McCombs even had an "ongoing treatment relationship" with the plaintiff at the time he rendered his opinion.  *See* 20 C.F.R. § 416.902. However, because the Court concludes that the ALJ properly assessed Dr. McCombs' medical opinion under the more stringent rules applicable to the opinions of treating sources, it is not necessary for the Court to determine whether he was in fact a treating source.

as well as the lack of current treatment at the time Dr. McCombs completed the Medical Source Statement are appropriate reasons for giving his opinion less weight. Consequently, the Court concludes that the ALJ complied with the treating source rule when evaluating Dr. McCombs' opinion.

### 2. The ALJ properly evaluated the plaintiff's subjective complaints.

The plaintiff argues that the ALJ's credibility finding is not supported by substantial evidence and fails to properly apply the factors set out in Social Security Ruling 96-7p and 20 C.F.R. § 404.1529. Docket Entry No. 16, at 22-25.

An ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)).

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at *5. Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although

not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.,* 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011). The ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the SSA and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. *See* 20 C.F.R. §§ 404.1529; 416.929; *Felisky,* 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit, in *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986), set forth the basic standard for evaluating such claims.[13] The *Duncan* test has two prongs. The first prong is whether there is objective medical evidence of an underlying medical condition. *Felisky,* 35 F.3d at 1039 (quoting *Duncan,* 801 F.2d at 853). The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* This test does not require objective evidence of the pain itself. *Duncan,* 801 F.2d at 853 (quoting *Green v. Schweiker,* 749 F.2d 1066, 1071 (3rd Cir. 1984)).

The ALJ satisfied the first prong of the *Duncan* test when he concluded that the plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (Tr. 23.) Given that the second prong of the *Duncan* test consists of two alternatives, the plaintiff must only meet one of the following two elements: the objective medical evidence

_____

[13] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky,* 35 F.3d at 1039 n.2.

"confirms the severity of the alleged pain arising from the condition" or the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." The SSA provides a checklist of factors to assess symptoms, including pain, in 20 C.F.R. § 404.1529(c). The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of his pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. 20 C.F.R. § 404.1529(c)(2). Besides reviewing medical records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire case record in light of the seven factors set forth in 20 C.F.R. § 404.1529(c)(3).[14]

In assessing the plaintiff's credibility, the ALJ considered a number of factors, including his daily activities, the location, duration, and intensity of the plaintiff's pain, and the plaintiff's treatment history. (Tr. 22-24.) In particular, the ALJ noted that the plaintiff "cares for personal needs; performs household chores, such as cleaning; and testified that he helps his mother pick beans in the garden in 45 minute intervals." (Tr. 24.) The ALJ also noted that the plaintiff "enjoys fishing and boating on a monthly basis," concluding that "[h]is ability to perform such a variety of daily and other activities tends to negate the credibility of his subjective complaints, especially the degree of pain he maintained he experiences." *Id.* These were appropriate factors for the ALJ to consider

---

[14] The seven factors include: (i) the plaintiff's daily activities; (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms; (vi) any measures plaintiff uses or has used to relieve pain or other symptoms (e.g. lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

when evaluating whether the plaintiff's subjective complaints of pain were disabling. The ALJ's assessment complies with *Duncan*, Social Security Ruling 96-7p, and 20 C.F.R. § 404.1529.

## IV. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 15) be DENIED and that the Commissioner's decision be affirmed.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation, and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,


JULIET GRIFFIN
United States Magistrate Judge